Upon the trial at Onslow, on the last circuit, before his Honor, JudgeSettle, it appeared that the lands once belonged to James Wade, who, on 16 March, 1832, conveyed them by a deed, properly executed, to one John Lloyd, under whom the defendant claimed. The lessor of the plaintiff set up title under several judgments and executions against Wade — a sale by the sheriff under said executions, and a deed from the said sheriff to himself, dated 7 February, 1833. The first judgment produced by the plaintiff's lessor was in favor of the State Bank, obtained at August Term, 1832, of Onslow County Court, upon which an execution issued tested of that term, and afterwards an alias tested of November term. The second was a judgment in favor of the plaintiff's lessor himself, obtained at the November term of the said County Court, and an execution issued tested of that term. The third was a justice's judgment, in favor of Jesse Webb, given on 10 March, 1832, an execution issued thereon the 27th of the same month, and levied the same day on Wade's lands, which was returned to court and the justice's judgment affirmed at the ensuing *Page 434 
(552) November term, and a venditioni exponas issued tested of that term. The fourth was a justice's judgment in favor of John Watson, granted 26 November, 1830, an execution issued thereon 27 November, 1830, at the foot of which there was an entry in the following words: "March 1, 1832, execution renewed," without the name of any magistrate signed to it. On this paper was endorsed by a constable "March 7, 1832 — this execution levied on all the lands of James Wade, lying on the head of Queen's creek, on the west side of said creek." The papers were then returned to the County Court at its May term, from which a notice issued to the defendant; and at November term ensuing, the justice's judgment was affirmed, and a venditioni exponas issued tested of that term. The fifth was also a justice's judgment in favor of James Riggs, granted 11 February, 1832, on which an execution issued March 10, 1832, which was the same day "levied on all the lands of James Wade, lying on Queen's creek," and returned to May term ensuing of the court. A notice to the defendant was issued from that term, and at the November term following the justice's judgment was affirmed and a venditioni exponas was issued tested of that term. The sixth was also a justice's judgment in favor of Elijah Riggs, granted in July, 1831, on which an execution issued August 23, 1831, which was renewed January 16, 1832, and on 17 February, 1832, was "levied on all the lands of James Wade, lying on the head of Ketchum's mill pond, joining the lands of said Ketchum," and returned to the county court at its May term, 1832, from which a notice issued to the defendant, and at the November term following the justice's judgment was affirmed, and avenditioni exponas issued tested of that term. The sheriff's deed, after reciting the execution in favor of the State Bank against James Wade, and that by virtue thereof he had levied upon the lands thereinafter "more particularly described of the goods and chattels, lands and tenements of James Wade," proceeded as follows, "and on the 4th day of February instant, sold the same to Luke Huggins, he being the highest bidder, at and for the price of $20.25; and also other fi. fas.,(553) venditioni exponas. Now, know all men by these presents, that I, Peter Harrell, sheriff as aforesaid, by virtue of and in obedience to, the aforesaid writ of fieri facias, and by authority of my said office, for and in consideration of the said sum of twenty dollars and twenty-five cents, to me in hand paid by the said Luke Huggins, at and before the sealing of these presents, the receipt whereof is hereby acknowledged, have bargained and sold, aliened, set over and confirmed, and I do hereby bargain, sell, alien, set over and confirm unto the said Luke Huggins, his heirs and assigns forever, all the right, title and estate which the said James Wade has in and to a certain piece of land lying and being in the county of Onslow, on Queen's Creek, being all the lands which the *Page 435 
said Wade owned on said creek," etc. After the lessor of the plaintiff had produced and read in evidence the judgments, executions and deed above mentioned he called a witness to prove that at the commencement of this action the defendant was living on the land in dispute. The witness testified that the defendant's houses and clearing were exclusively upon the parcel of one hundred acres first described in the declaration, but that the pines were boxed upon and throughout the several other parcels as described, and that all the boxes were tended or cultivated for turpentine by Ketchum at the time of bringing the action and for two years prior thereto. This witness also proved that all the parcels of land described in the declaration were adjoining to each other, and were lying upon the waters of Queen's Creek in Onslow County; and that there was no other possession of any part of said lands than that held by the defendant.
The recovery was objected to on the part of the defendant, because:
1st. The levy of a constable on land did not bind the same, and a sale by the defendant in execution was good notwithstanding.
2ndly. The descriptions of the land in the levies were too indefinite and vague to pass the estate.
3rdly. The sale was fraudulent and void, by reason of the sheriff's setting up too many separate parcels at the same time.
4thly. Too many parcels of land were united in the same declaration, and no recovery could be had.
5thly. The defendant was proved to be in possession of only (554) one of the messuages, viz.: that on which he lived, and the plaintiff was not entitled to recover beyond that.
6thly. The sheriff's deed did not recite the executions by virtue of which the lands were sold, and the description of the land in the sheriff's deed was too indefinite.
These objections were overruled by his Honor, and the jury were instructed to inquire whether the several writs of venditioni exponas andfieri facias, which were produced and read on the trial, were in the hands of the sheriff at the time of the sale; and if they were, that he had authority to sell. The jury were further instructed that if they believed from the evidence that the defendant, Ketchum, dwelt upon one of several contiguous parcels of land, and cultivated the others for turpentine in the usual way, as testified to by the witness, he was in possession of all, and the plaintiff's lessor was in this action entitled to recover all.
The jury returned a general verdict in favor of the lessor of the plaintiff, and the defendant moved for a new trial upon the ground of misdirection by the court, which being refused, and judgment given, he appealed. *Page 436 
The lands described in the declaration formerly belonged to James Wade. He, on 16 March, 1832, conveyed said lands to Lloyd, by a deed properly proved and registered. The defendant claims under Lloyd. The lessor of the plaintiff claims title by virtue of several judgments and executions against Wade — a sale and sheriff's deed to himself. The two county court executions, The Bank v. Wade and Huggins v.Wade and the justices' execution, Jesse Webb v. Wade, are each tested after the date of the deed to Lloyd; therefore they may be laid out of the question, as the plaintiff can derive no title under them. The plaintiff produced also a justice's judgment, Jno. Watson v. Wade, and an execution signed by the justice, tested on 27 November, 1830. At the foot of the said execution there is this entry, "March 1st, 1832, execution (555) renewed." There is no justice's name signed to this attempted renewal of the execution. We think that the signature of a justice is absolutely necessary to an alias, as well as to the original execution, on a justice's judgment. The levy of the constable, therefore, under this entry, was without authority and void. The original execution at the end of three months became defunct — the act of Assembly directing it to be returned in three months from the date thereof. We think that the levy and sale, under this judgment, execution and proceedings thereupon gave the plaintiff no title.
The lessor then produced a justice's judgment, obtained by James Riggsv. Wade, and an execution on the same tested 10 March, 1832, and on the same day the constable made this return thereon, "March 10th, 1832, this execution levied on all of the lands of James Wade lying on Queen's Creek." There was notice issued to Wade, which was served in the time prescribed by law, an order of sale by the county court, and a venditioni exponas. We are, however, of the opinion that the constable's levy on this execution must be regarded prima facie insufficient to sustain the venditioni. The law requires that for want of goods and chattels to satisfy the execution, then the officer shall levy on lands and tenements, setting forth on the execution what lands and tenements he has levied on, "where situate, on what water course, and whose land it is adjoining." In Borden v. Smith, 3 Dev. Bat., 34, we have said when an execution upon a justice's judgment is levied upon land, and returned to the county court, it is essential to the validity of the order, which the court is authorized to make, to sell the land levied on, that the land should be particularly described; and a levy generally upon the defendant's "lands," without further specification or description, will not support such order nor the sale made under it. *Page 437 
Queen's Creek may run through the whole extent of the county; Wade may have had many tracts of land, and at different places on this creek. Such a description recited in the venditioni does not inform the sheriff what lands he is to sell. The sale was at the courthouse, the people probably would not know from this description where the lands lay. The neighborhood, the quantity, the quality and every other circumstance that a prudent bidder would like to know before (556) he parted with his money, would seem to be wanting. By such a levy a defendant might be deprived of valuable lands for a mere trifle — it is too much like guesswork. We do not mean to say that the levy must be in the very words of the act of Assembly; but that a description containing a part only of that prescribed in the act must be taken to be insufficient in point of the certainty thereby required until it be shown, as a fact, that it identified the land levied on as effectually as it would have been identified by a description conforming to that prescribed in the act. As no such evidence is stated to have been offered in this case, we hold that the judge erred in instructing the jury that this venditioni conveyed a valid authority to sell. It is true that Wade might have moved the county court to stay the order of sale for the uncertainty in the levy. But we do not think that his omitting to make such a motion cures the defect in the levy.
The lessor produced also a justice's judgment in favor of Elijah Riggsv. James Wade, with an execution on the same, tested 23 August, 1831; execution renewed 16 January, 1832, and signed by the justice. The officer returned on this execution as follows: "February 17th, 1832, this execution levied on all the lands of James Wade lying on the head of Ketchum's mill-pond, adjoining the lands of said Ketchum." Here we may say that the act of Assembly was substantially, nay literally, complied with except in the omission of Ketchum's Christian name, and this was unnecessary as he is described as the same Ketchum whose mill-pond had been before mentioned. All the proceedings up to the sheriff's sale under this levy were agreeable to law. Under this venditioni
the sheriff was authorized to sell all the lands of Wade lying on the head of Ketchum's mill-pond, adjoining the lands of the said Ketchum. And if Huggins bought, and the sheriff conveyed these lands under that venditioni, a good title passed thereby. There were several objections made to the plaintiff's recovery. First. That the constable's levy did not bind the land. Answer: We are of the opinion that the levy under Elijah Riggs's execution did bind the land; and if that land was sold under the venditioni exponas, the lien had relation back to the time when the levy was made, so as to defeat the sale made afterwards by Wade. Lash v. Gibson, 1 Murp., 266. Second objection. (557) The description of the land in the levy is too indefinite and vague. Answer: The description in the levy under Elijah Riggs's *Page 438 
execution is almost in the very words of the act of Assembly, substantially corresponds with it, and therefore is not too vague. Third objection. The sale was fraudulent and void by reason of the sheriff's setting up too many parcels of land at the same time. Answer: The sheriff had authority to sell "all the lands of Wade lying on the head of Ketchum's mill-pond, adjoining the lands of the said Ketchum." If the lands embraced in that description comprehended more tracts or parcels of land than one, a sale en masse by the sheriff will still be supported, because it is warranted by his execution, and no fraud is shown either in the sheriff or the purchaser. Den ex dem. Wilson v. Twitty, 3 Hawks, 44; Den ex dem. Thompson v. Hodges, 3 Hawks, 51. Fourthobjection. Too many parcels of land are united in the same declaration, and no recovery can be had. Answer: The quantity of the land declared upon need not correspond with that which the plaintiff claims. He may declare for an indefinite number of messages, and he will recover according to the quantity to which he proves title. 2 Leigh's N. P., 886; Adams on Eject. We see no force in this objection, especially as it appears that all these tracts adjoined each other and constituted in fact but one tract in the possession of the defendant. Fifthobjection. The defendant was proved to be in the possession of only one of the messages, viz., that on which he lived, and the plaintiff was not entitled to recover beyond that. Answer: The defendant had cultivated the other tracts of land for turpentine, in the usual way, for two years. The witnesses proved that he was in this way in possession of all the land. We think this possession was all that was necessary for the plaintiff to prove in this action. Sixth objection. The sheriff's deed does not recite the executions by virtue of which the lands were sold, and the description of the land in the sheriff's deed is too indefinite. Answer: As to the first branch of this objection, the sheriff, in his deed, after specially reciting the bank execution, goes on to say that he sold by virtue of this, "and also of other fieri facias and venditioni exponas."
If a sheriff sell under an execution authorizing him to sell, (558) although in his deed to the purchaser he make an erroneous recital of the power under which he sells, yet his deed is good and passes the title. Den ex dem. Hatton v. Dew, 3 Murph., 260. The recital is not an essential part of this deed; it affirms no fact, and will not amount to an estoppel. This deed, however, does recite that the sheriff sold under venditioni exponases. That he sold under Elijah Riggs'svenditioni must be presumed, we think, until the contrary be shown, if he had that execution in his hands at the time, and sold the lands thereby directed to be sold. The second branch of this objection is that the description of the land in the sheriff's deed is too vague and *Page 439 
uncertain. The words of the deed are: "I do hereby bargain and sell unto Luke Huggins, his heirs and assigns, all the right, title and estate which the said James Wade has in and to a certain piece of land lying and being in the county of Onslow, on Queen's Creek, being all the land which the said Wade owned on said creek; to have and to hold," etc. The description of the land in a deed is certainly of great importance. As to which, it is evident that nothing can be described but by some general denomination applied to the individual subject, by the addition of its proper name, or of some peculiar circumstances of locality, quantity, quality, possession or title. Burton on Real Property, 81. In this deed there are peculiar circumstances of both locality and title; it is all the right and title in and to a certain piece of land of James Wade, lying on Queen's Creek in Onslow County, being all the land said Wade owned on said creek. That is certain which can be rendered certain. We must say, however, that this description is far from being as particular as we could wish to see in sheriffs' deeds. The jury have found that all the lands described in the declaration are covered by this deed; we, however, think that only the land mentioned in the levy under Elijah Riggs's execution could have been rightfully sold by the sheriff or conveyed to the purchaser. Now, whether that land be in fact the same with the land described in the plaintiff's declaration, or be a part thereof only, or be in fact land situate elsewhere and no part of it, does not appear. And as we think that the judge erred in holding that all the venditionis exhibited in evidence were sufficient in law, and it may be that the verdict establishing the plaintiff's title to the land contained in the declaration was founded upon the other venditionis, we must reverse the judgment (559) and direct the court below to award a venire de novo.
PER CURIAM. Judgment reversed.
Cited: Gifford v. Alexander, 84 N.C. 333; Smith v. Low, 24 N.C. 460;Blanchard v. Blanchard, 25 N.C. 108; Morrison v. Love, 26 N.C. 41;Chasteen v. Phillips, 49 N.C. 461; Grier v. Rhyne, 67 N.C. 340;Hilliard v. Phillips, 81 N.C. 105; Farrior v. Houston, 100 N.C. 373;Presnell v. Landers, 40 N.C. 256; Gilliam v. Bird, 30 N.C. 286; Jonesv. Austin, 32 N.C. 21; McCanless v. Flinchum, 98 N.C. 365. *Page 440